UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REVPAR GREEN HILLS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| DONALD F. ("TREY") ROCHFORD, ROCHFORD REALTY AND CONSTRUCTION CO., INC., and BEDFORD COMMONS ASSOCIATION, INC., | ) Civil Action No. _____ ) ) JURY DEMAND ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, RevPar Green Hills, LLC, brings this action under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26 (in addition to certain state law claims), contending that Defendants Donald F. ("Trey") Rochford, Rochford Realty and Construction Co., Inc., and Bedford Commons Association, Inc. (acting through the members of its "Design Review Committee"), have conspired, combined, confederated and agreed with one another and others to prevent Plaintiff from building a hotel (specifically, a "Hyatt Place" hotel) that would compete with the Green Hills Hampton Inn located at 2324 Crestmoor Road in Nashville, approximately three-tenths of a mile (over the road) from Plaintiff's property at 3818 Bedford Avenue. They have done so by relying upon various pretexts to deny Plaintiff's application for approval to build the hotel even though the Metropolitan Planning Commission approved the hotel's plan in October 2018. Upon information and belief, Plaintiff alleges that Defendant Donald F. ("Trey") Rochford has an ownership interest in the

Hampton Inn. According to its own website, Defendant Rochford Realty and Construction Co., Inc., manages the property.

## The Parties

1. Plaintiff, RevPar Green Hills, LLC ("RevPar"), is a Georgia limited liability corporation with its principal place of business at 3217 Teton Dr., Atlanta, GA 30339. It was formally incorporated on November 20, 2018, although its principals and representatives had been operating as an organization to acquire the property at 3818 Bedford Avenue and build a Hyatt Place Hotel since at least March 2018. Although many of the events referred to in this Complaint occurred before November 20, 2018, the Complaint will sometimes collectively refer to Plaintiff's predecessors-in-interest acting on behalf of what became RevPar as "Plaintiff" for ease of reference.

2. Defendant Donald F. "Trey" Rochford ("Rochford") is a resident of Nashville, Tennessee. He holds himself out as a Vice President of "The Rochford Companies" located at 2200 Abbott Martin Road in Nashville, although this entity was dissolved in August 2011 according to the records of the Tennessee Secretary of State's Office. In any event, he is affiliated in some form or another with Defendant Rochford Realty and Construction Co., Inc., and at all relevant times was acting as an agent for, and on behalf of, Defendant Rochford Realty and Construction Co., Inc. Plaintiff further alleges upon information and belief that Defendant Rochford holds an ownership interest, directly or indirectly, in the Hampton Inn located at 2324 Crestmoor Road. At all relevant times, Defendant Rochford was also the "Secretary" for Defendant Bedford Commons Association, Inc., and its "Design Review Committee." Defendant is the son of John Rochford, a member of the Board of Directors of Defendant Bedford Commons Association, Inc., and a principal of Defendant Rochford Realty and Construction Co., Inc. Upon

2

information and belief, Plaintiff alleges that both Rochfords, father and son, have ownership interests in the subject Hampton Inn.

3. Defendant Rochford Realty and Construction Co., Inc. ("Rochford Realty"), is a Tennessee corporation with its principal place of business at 2200 Abbott Martin Road, Suite 201, in Nashville. According to its website, Rochford Realty manages the Hampton Inn at 2324 Crestmoor Road in Green Hills. According to the Davidson County Tax Assessor's Office, the record owner of the Hampton Inn property is GH Company, LLC, which shares the same 2200 Abbott Martin Road address with Defendant Rochford Realty. According to the records of the Tennessee Secretary of State's Office, the status of GH Company, LLC, is "inactive-merged." It appears that GH Company, LLC, merged into GH Company, a general partnership, on December 31, 1999. As a general partnership, GH Company is not on record with the Secretary of State's Office. The ownership of GH Company will be a subject of discovery.

4. Defendant Bedford Commons Association, Inc. ("Bedford Association"), is a Tennessee corporation with its principal place of business at 2200 Abbott Martin Road, Suite 200, in Nashville. Article VI of the "Declaration of Covenants, Conditions, Restrictions, and Easements for Bedford Commons" (hereinafter, "Covenants and Restrictions") contemplates the formation of a "Design Review Committee" ("DRC") consisting of no less than three persons. However, no DRC was formed until July 18, 2018, when the current DRC was formed specifically for the purpose of reviewing Plaintiff's hotel plan. Its members are Mr. Ron Farris, Mr. Mike Munday, and Mr. Jackson Moore, who "volunteered" to be on the Committee. At all relevant times, they were acting as agents for and on behalf of Defendant Bedford Association. According to Section 6.1 of Article VI of the Covenants and Restrictions, the DRC has the responsibility "for reviewing all plans for the proposed use, design, construction and alteration of Buildings and Improvements

within Bedford Commons and for performing such other functions are delegated to it pursuant to this Declaration."

## Subject Matter Jurisdiction

5. This case arises under the antitrust laws of the United States, specifically 15 U.S.C. §§ 1 and 26. Accordingly, jurisdiction lies in this Court under 28 U.S.C. § 1331. Additionally, this Court has original jurisdiction over this antitrust action under 28 U.S.C. § 1337, and it has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

## Personal Jurisdiction

6. All Defendants are domiciled in, organized under the laws of, or have their principal place of business in Nashville, Davidson County, Tennessee, thereby establishing personal jurisdiction under Fed. R. Civ. P. 4(k)(1) and Tenn. Code Ann. § 20-2-222(1).

## Venue

7. Plaintiff seeks injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26. Venue for such actions lies in "any court of the United States having jurisdiction over the parties[.]" *Id.* Because this Court has jurisdiction over the parties, as outlined above, venue lies in the Court. In addition, venue lies in this Court under 28 U.S.C. § 1391(b)(1)&(2).

## The Facts

8. Plaintiff and its various affiliates have, for several years, been in the business of constructing and selling hotel properties, primarily in the southeastern United States. Its principals are Pieush Patel, Hemel Surati, Bhavesh Patel, Vrushank Surati, Sachin Patel, Dharmesh Surati, and Vikash Surati.

9. In the early spring of 2018, Plaintiff's principals began discussions with Edward Ewing about the possibly of acquiring the property at 3818 Bedford Avenue, which Mr. Ewing then owned. Plaintiff's predecessor-in-interest, RevPar Development, LLC, and Mr. Ewing

entered into a Purchase and Sale Agreement for the property on April 20, 2018. The sale closed on November 27, 2018.

10. Mr. Ewing had obtained approval from Defendant Bedford Association to build an office building on the lot in the summer of 2016, but he subsequently decided to sell the property. Plaintiff's principals were interested in the possibility of building a hotel on the property, which Mr. Ewing, for his part, supported. As the owner of the 3818 Bedford Avenue property, Mr. Ewing was a member of Defendant Bedford Association.

11. Despite the apparent requirements of the Covenants and Restrictions quoted above, no DRC participated in the approval of Mr. Ewing's office building project, and no DRC even existed at that time. In fact, it appears that no DRC had ever been formed before the one that rejected Plaintiff's hotel plan. The February 28, 2019, Minutes of the Bedford Commons Association Board Meeting specifically state that the current DRC was seated to review Plaintiff's hotel proposal.

12. Mr. Ewing's office building would have covered approximately 57% of the lot at 3818 Bedford Avenue.

13. The approval for Mr. Ewing's office building was communicated to him by Mr. John Rochford, a principal of Defendant Rochford Realty and a Board member of Defendant Bedford Association.

14. Under Section 6.5 of Article VI of the Covenants and Restrictions, the DRC seemingly has broad – but not unlimited – discretion to approve or disapprove any plans submitted to it: "The Design Review Committee will have the right to approve or disapprove any plans or specifications submitted to it on any *reasonable grounds*, including, without limitation, any matter which, in the absolute judgment of the [DRC], would render the proposed Improvements or use

5

*inharmonious* with the general plan for improvement of Bedford Commons, this Declaration or specific design guidelines promulgated by the Design Review Committee." (Emphasis added.) Under Tennessee law, however, this discretion may not be exercised arbitrarily and capriciously. It also goes without saying that this discretion cannot be exercised to restrain competition in violation of state and federal law.

15. Plaintiff's representatives began making written submissions to the DRC and the Metropolitan Planning Department (a/k/a Metro Planning Commission) no later than July 2018. Planning Department approval of the plan was necessary before the project could move forward.

16. On September 25, 2018, Plaintiff's representatives met with representatives of the Metropolitan Planning Department seeking to defer an October 4 hearing on Plaintiff's plan for the hotel before the Department until October 11, 2018. Inexplicably, also present was Defendant Rochford. However, the Planning Department staff conveyed that the plan, as modified, might allow for administrative approval without the necessity of a hearing.

17. On September 26, 2018, Defendant Rochford sent an email to the three members of the DRC and others reporting on the events of the previous day. A copy is attached as Exhibit A. He conveyed that Plaintiff's application could be approved by the city "administratively, without hearing." However, Defendant Rochford then stated that "[n]one of that changes the fact that the plans must still be approved by the Design Review Committee before they are able to start construction." ("They" referring to Plaintiff's representatives.) As evidenced by Exhibit A, by this point, Defendant Rochford and at least a majority of the three-member Design Review Committee had agreed that no such approval would be forthcoming. The Design Review Committee acted on behalf of Defendant Bedford Association.

6

Case 3:19-cv-00290   Document 1   Filed 04/08/19   Page 6 of 19 PageID #: 6

18. On October 4, 2018, the Metropolitan Government Planning Department sent a letter to Plaintiff's representative styled "Compliance with the Bedford Avenue Urban Design Overlay and Final Site Plan Approval for Bedford Hotel." This letter approved the final site plan for the hotel with some minor modifications.

19. The minutes of the October 11, 2018, meeting of the Metro Planning Commission reflect that Defendant Bedford Association and "other owners of property" had made a request that Planning Commission's approval "take into account the approval of the private DRC." The Planning Commission staff declined to do so, however. Consequently, Defendants' efforts to kill Plaintiff's hotel project at the Planning Commission stage were unsuccessful.

20. A copy of the June 17, 2003, "Bedford Avenue Urban Design Overlay" ("Bedford UDO") that the October 4, 2018, Planning Department letter was referring to is attached as Exhibit B. As the cover of the document reflects, the Metropolitan Council has "adopted" the Bedford UDO by way of an ordinance (or, more precisely, three such ordinances).

21. Since at least July 2018, Plaintiff's representatives had been making submissions to Defendant Bedford Association's DRC seeking approval for the project.

22. On October 10, 2018, Plaintiff's representatives met with the DRC and others to make an in-person presentation about their project. Later that day, Defendant Rochford emailed a letter to Plaintiff's representatives informing them that the DRC had "reached a decision and took a vote" [sic] rejecting their proposal and that a more detailed response would be forthcoming. This was in keeping with Defendant Rochford's September 26 email (Exhibit A), in which he had observed to the members of the DRC that Plaintiff's plans would still have to be approved by the DRC before "they" could begin construction.

7

23. On October 30, 2018, an unsigned letter on DRC letterhead was addressed to Defendant Rochford thanking him "for compiling an outline that discusses the basis of our disapproval for the Hyatt Place Hotel project" and asking him to prepare a letter to the Hyatt Place Hotel providing a "more detailed explanation" as to why the DRC had rejected its proposal.

24. On November 5, 2018, Plaintiff's representatives received by email a six-page, unsigned PDF from Defendant Rochford entitled "Bedford Avenue Master Association Design Review Committee Report – Proposed Hyatt Place for 3818 Bedford Avenue" ("DRC Report"). A copy is attached as Exhibit C. The "Properties" function of the PDF reflects that the "Author" of the document was Defendant Rochford. Plaintiff contends that the Report's Conclusions are arbitrary and capricious, as more fully articulated below, and are but a pretext for preventing competition with the nearby Hampton Inn in which Defendant Rochford appears to have an ownership interest. For example, in a text message on or about October 11, 2018, Mr. John Rochford, a principal of Defendant Rochford Realty, referred to the Hampton Inn (in context) as "[o]ur hotel[.]" ("Our" meaning Defendant Rochford and Mr. Rochford.) To be clear, this was in the context of protesting (apparently unprompted) that "[o]ur hotel has nothing to do with it." ("It" meaning the DRC's rejection of Plaintiff's hotel plan.)

25. After November 5, 2018, Plaintiff retained counsel and renewed its efforts to negotiate a resolution with the DRC and its counsel. There were a series of communications and meetings among the parties and their counsel. On Monday, March 25, 2019, however, Defendant Rochford communicated to Plaintiff's representatives that the DRC had refused to reverse its decision denying Plaintiff's application. A confirming email followed on March 26 (copy attached as Exhibit D).

8

Case 3:19-cv-00290   Document 1   Filed 04/08/19   Page 8 of 19 PageID #: 8

26. By no later than September 26, 2018 (the date of his email to the members of the DRC and others, Exhibit A), Defendant Rochford, acting in his capacity as a principal of Defendant Rochford Realty and for himself, had caused at least two members of Defendant Bedford Association's DRC to agree that they would reject Plaintiff's hotel proposal to the end of preventing competition with the Hampton Inn, and not on the merits.

27. This lack of merit is manifest in the DRC Report itself (Exhibit C). The preface recites that under the Covenants and Restrictions, the DRC has the right to approve or disapprove any plans or specifications "on any reasonable grounds, including, without limitation, any matter which, in the absolute judgment of the [DRC], would render the proposed improvements of use inharmonious with the general plan for improvement of Bedford Commons." (The Report has no page numbers to cite for reference.)

28. But the DRC Report gets more specific, reciting that the Covenants and Restrictions call for a review to be consistent with the following guidelines (as applicable to Plaintiff's site): (a) Features; (b) Mechanical Equipment; (c) Service Areas and Dumpsters; (d) Signs; and (e) Utilities. (Plaintiff has not included the descriptions that went with these headings.) There is no mention of "lot coverage" or "parking" in the Covenants and Restrictions.

29. The Report goes on to state that the DRC had adopted the Bedford UDO (Exhibit B) for assessing the "congruity of proposed projects with the surrounding properties" of Defendant Bedford Association on Bedford Avenue. "[T]he [DRC] feels that the Bedford Urban Design Overlay document is the most logical adopted set of guidelines to compare a proposed project to the surrounding properties." The Covenants and Restrictions make no reference to the Bedford UDO guidelines, however, so if the DRC has adopted them, it must appear elsewhere or not be documented at all.

9

30.     The DRC Report then states that "[u]tilizing these guidelines as a basis for judgement," the DRC had found the current proposal for a Hyatt Place Hotel to be sufficiently "inharmonious with the existing properties in the Bedford Master Association as to warrant a vote to disapprove the plan." However, this was contrary the conclusion of the Metropolitan Planning Department itself, which had found that the plan complied with the Bedford UDO on October 4. The Report offered no explanation as to why the DRC's conclusion was contrary to that of the Planning Department.

31.     There is also a substantive discontinuity in the contents of the Report. The Report begins by stating that the DRC's review must be consistent with the following guidelines from the Covenants and Restrictions (listing Features, Mechanical Equipment, Service Areas and Dumpsters, Signs, and Utilities). These subjects do, in fact, appear in the Covenants and Restrictions. However, there is no further discussion of these topics or Plaintiff's compliance with their requirements in the Report. Instead, the Report jumps to these six subjects: (a) "Size of the project"; (b) "Parking"; (c) "Intensity of Use"; (d) "Management of Construction Activities"; (e) "Material Usage"; and (f) "Lack of Emphasis on All Sides." These topics (or at least four of them) were purportedly derived from the Bedford UDO standards. But again, the Metropolitan Planning Department had already found that Plaintiff's plan complied with those standards.

32.     The most critical finding in the Report was that "78% of the area of [Plaintiff's] lot would be covered by the building" (hereinafter referred to as "lot coverage"). This was in contrast to the two neighboring buildings, which had approximately 33% and 42% lot coverage, according to the Report. Based on this finding, the DRC concluded that Plaintiff's hotel plan would be inconsistent with one of the UDO goals, i.e., to "[e]ncourage new development to be sensitive of and compatible to the scale and character of its setting." To reiterate, however, the Covenants and

Restrictions say nothing about "lot coverage." Plaintiff fully complied with the UDO's setback requirements.

33. The quoted language from the Bedford UDO (Exhibit B) appears as the last of six bullet points on page 2 under the heading "Intent of the Guidelines." In other words, it is not even a Guideline, and even if it were, it is vague to the point of meaninglessness. Moreover, one will search the UDO Guidelines in vain for anything to do with "lot coverage" or the like.

34. As stated above, the "lot coverage" of Mr. Ewing's proposed office building on the same lot was approximately 57%. The reasonable inference is that the DRC's acceptable "lot coverage" (or range of acceptable "lot coverages") is somewhere between 57% and 78%, which is not that great a range. Again, however, there was no DRC to pass on Mr. Ewing's office building project; the DRC was formed solely for the purpose of reviewing Plaintiff's hotel project.

35. The unsigned Report also refers to the "Illustrative Concept Plan" on page 4 of the Bedford UDO (and reprinted in the Report) to suggest that "[i]t should be reviewed as a guide for appropriate building placement, parking arrangement, buffer placement, and street design." The Report further contends that the diagram on page 4 serves to illustrate the "intent" of the general plan with respect to "building size and placement," etc. The Illustrative Concept Plan may have some value as a general "guide," but it does not inform in any way the contrived issue of "lot coverage," as even the most cursory examination of the diagram reveals.

36. As stated above, after receipt of the November 5 Report, Plaintiff's principals retained counsel and set about to address the DRC's concerns, particularly with respect to the issues of parking and material usage. Plaintiff believes it has done so, although at substantial expense. To address the parking concern, Plaintiff added an additional level of underground parking, at a cost of approximately $2 million, such that the plan exceeded the parking

11

requirements of the UDO. The DRC has repeatedly complained that Plaintiff should not charge for valet parking, but that is beyond the purview of the DRC. Plaintiff addressed the material usage concern by converting the façade to approximately 90% brick, at a cost of approximately $400,000.

37. The other three concerns were, in order, "intensity of use," "management of construction activities," and "lack of emphasis on all sides." As written up by the DRC (and/or Defendant Rochford), the intensity of use concern was, in substance, the lot coverage issue restated. As the DRC should well know, Plaintiff has no control over the "management of construction activities"; the Metro Public Works Department has exclusive control over that. As for "lack of emphasis on all sides," even the DRC acknowledges that the Bedford UDO does not address this "principle." Nevertheless, Plaintiff has made design changes to meet this concern.

38. As for "lot coverage," the simple fact is that Plaintiff cannot materially reduce the footprint of the hotel without losing rooms and rendering the project financially infeasible. Plaintiff has taken considerable pains at substantial expense to design and redesign other possibilities on a smaller footprint, but none of them have proven feasible.

39. At one point, a representative of the DRC floated the possibility of a four-story hotel with a smaller footprint (approximately 60% lot coverage). Plaintiff drew it up, but that concept would not work without losing rooms. Ironically, the Bedford UDO limits buildings on the East side of Bedford Avenue (3818 Bedford Avenue's location) to three stories, so there was no reasonable likelihood of obtaining approval for a four-story hotel from the Metro Planning Department *and* the Metro Council to begin with.

40. In any event, Plaintiff and its representatives sought an amicable resolution with Defendant Rochford and Defendant Bedford Association from November 5, 2018, up to the filing

12

of this action, obviously without success. Plaintiff has incurred substantial damages on account of the unreasonable delay in obtaining approval of its hotel project, estimated to be on the order of $10 million, and will continue to do so.

41. It appears that on Thursday, March 21, 2019, the DRC met with Defendant Rochford (and perhaps others) and reaffirmed its decision to reject Plaintiff's hotel plan. Defendant Rochford communicated this to Plaintiff's representatives on Monday, March 25, and further represented that a letter from the DRC would follow. A confirming email from Defendant Rochford followed on March 26 (Exhibit D).

## **Count I – All Defendants**
**(Injunctive Relief Under Section 16 Of The Clayton Act)**

42. Paragraphs 1-41 are hereby incorporated by reference as if set forth fully herein.

43. Defendants combined, conspired, confederated and agreed together to prevent Plaintiff from building a hotel at 3818 Bedford Avenue that would compete with the nearby Hampton Inn at 2324 Crestmoor Road. The conspiracy constituted an unreasonable restraint on interstate commerce, in that hotels are inherently involved in interstate commerce. Defendants' business activities had a substantial effect or the potential of causing a substantial effect on interstate commerce. Plaintiff suffered injury in its business or property as a proximate result of the combination or conspiracy.

44. Defendants' efforts to prevent Plaintiff from building a hotel at 3818 Bedford Avenue to avoid competition with the Hampton Inn at 2324 Crestmoor Road constituted a *per se* violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

45. Under section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, any private party "shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a

violation of the antitrust laws[.]" Under the antitrust laws, any conspiracy in restraint of trade is illegal. 15 U.S.C. § 1.

46. More specifically, as set forth above, Defendants engaged in a conspiracy to prevent Plaintiff's planned hotel from competing with the Hampton Inn located at 2324 Crestmoor Road, in which Defendants Rochford and Rochford Realty have a financial interest.

47. Plaintiff will suffer irreparable harm if Defendants continue to deny its application to build a hotel at 3818 Bedford Avenue.

### Count II – All Defendants
### (Action For Treble Damages Under Section 1 Of The Sherman Act)

48. Paragraphs 1-47 are hereby incorporated by reference as if set forth fully herein.

49. Section 1 of the Sherman Act, 15 U.S.C. § 1, provides that every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, is illegal.

50. Defendants' agreement amongst themselves and with others to prevent Plaintiff from building a hotel at 3818 Bedford Avenue constituted an unreasonable restraint on interstate commerce.

51. Defendants' business activities had a substantial effect or the potential of causing a substantial effect on interstate commerce, and Defendants' challenged activities involve a substantial amount of interstate commerce.

52. Plaintiff suffered injury in its business or property as a proximate result of the combination or conspiracy described above in an amount to be determined by a jury. Under section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, Plaintiff is entitled to threefold the amount of damages it sustained, plus its reasonable attorneys' fees.

## Count III—All Defendants
### (Action For Damages for Intentional Interference with Prospective Business Relations)

53. Paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

54. Plaintiff, as part of its plans to build a hotel at 3818 Bedford Avenue, had a prospective relationship with an identifiable class of third persons—namely, individuals choosing a hotel in Green Hills, Nashville, Tennessee.

55. Defendants had knowledge of that prospective relationship by virtue of, among other things, their attendance at the September 25, 2018, Metropolitan Planning Department hearing, their attendance at the October 10, 2018, in person presentation by Plaintiff regarding its hotel construction proposal, their role in reviewing Plaintiff's hotel plans, and their experience running a hotel approximately three-tenths of a mile from Plaintiff's proposed site.

56. Defendants intended to cause the breach of these prospective business relationships by preventing Plaintiff from building a hotel that would serve those customers.

57. Defendants acted with improper motives and using improper means, including conduct that violated antitrust statutes and constituted unfair competition, as described above.

58. Defendants' tortious interference has resulted in damages to Plaintiff, which has been prevented from recognizing the profits that would have resulted from the prospective business relations at issue as a result of Defendants' tortious interference.

## Count IV—Rochford and Rochford Realty
### (Allegations Establishing Conspiracy Liability)

59. Paragraphs 1-58 are hereby incorporated by reference as if fully set forth herein.

60. Defendants Rochford and Rochford Realty had a common design with each other and with Defendant Bedford Association to prevent competition with the Hampton Inn located at

15

Case 3:19-cv-00290   Document 1   Filed 04/08/19   Page 15 of 19 PageID #: 15

2324 Crestmoor Road, in which Defendants Rochford and Rochford Realty have a financial interest.

62. Defendants conceived this common design in order to accomplish by concerted action unlawful purposes—including the restraint of trade and tortious interference with Plaintiff's prospective business relations—by unlawful means—including unfair competition and other unlawful or tortious conduct.

62. In furtherance of this conspiracy, Defendants took several overt acts, including but not limited to Defendant Bedford Association's overt act of rejecting Plaintiff's hotel plans.

63. Defendant Rochford's participation in this conspiracy was outside the scope of his representative capacity as the Secretary of Defendant Bedford Association. Instead, his actions and involvement were done to further his own personal purpose—restraining competition with the Hampton Inn located at 2324 Crestmoor Road—and not any purpose of Defendant Bedford Association.

64. Defendants Rochford and Rochford Realty have actively participated in the overt acts in furtherance of this conspiracy, intentionally aided Defendant Bedford Association in those acts, and ratified Defendant Bedford Association's tortious acts done for the benefit of Defendants Rochford and Rochford Realty.

65. As a result of Defendants' overt acts in furtherance of this conspiracy, Plaintiff has suffered damages, including the additional costs incurred in its futile efforts to convince Defendants to approve its plans and the lost profits caused by its inability to construct its planned hotel.

66. Defendants Rochford and Rochford Realty should therefore be held jointly and severally liable for damages caused by the wrongful acts committed by Defendant Bedford Association in furtherance of this conspiracy, and vice-versa.

### Count V—Bedford Association
**(Declaratory Judgment and Injunctive Relief)**

67. Paragraphs 1-66 are hereby incorporated by reference as if fully set forth herein.

68. 28 U.S.C. § 2201 authorizes this Court, "[i]n a case of actual controversy within its jurisdiction, . . . [to] declare the rights and other legal relations of any interested party seeking such declaration."

69. An "actual controversy" exists between Plaintiff and Defendant Bedford Association regarding Defendant Bedford Association's refusal to approve Plaintiff's hotel plan.

70. In denying approval for Plaintiff's hotel plans, Defendant Bedford Association, through its DRC, acted arbitrarily, capriciously, unreasonably, and in bad faith.

71. Plaintiff's hotel plan was consistent with the surrounding circumstances and the general scheme of development, and Defendant Bedford Association lacked a proper basis for rejecting that plan. Instead, Defendant Bedford Association relied upon a series of pretextual and meritless reasons, which are either improper considerations as a general matter, improperly interpreted with respect to Plaintiff's plan, or abandoned, waived, or inequitable or unfair in light of general material changes in the character of the neighborhood.

72. Accordingly, Plaintiff seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that its hotel plan is consistent with the Bedford Association's Covenants and Restrictions, and that Defendant Bedford Association must approve those plans.

73. Moreover, because Plaintiff will suffer irreparable harm if Defendant Bedford Association continues to refuse approval for its hotel plan, Plaintiff requests an injunction ordering Defendant Bedford Association to approve its hotel plan.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendants in the amount of actual damages to be proven at trial, trebled under the Sherman Act, together with interest, attorneys' fees, costs, punitive damages in an amount to be fixed by the jury, a declaration that Plaintiff's hotel plan must be approved by Defendant Bedford Association and an injunction to that effect, and such other and further general relief as this Court deems just and proper.

Respectfully submitted,

**NEAL & HARWELL, PLC**


By: /s/James G. Thomas
James G. Thomas, BPR No. 007028
Steve E. Groom, BPR No. 007048
Erik C. Lybeck, BPR No. 35233

1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

*Counsel for Plaintiff, RevPar Green Hills, LLC*