# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **REVPAR GREEN HILLS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-00290** |
| | ) | **Judge Campbell/Judge Frensley** |
| **DONALD F. ("TREY") ROCHFORD,** | ) | |
| **JOHN T. ROCHFORD, ROCHFORD** | ) | <u>**JURY DEMAND**</u> |
| **REALTY AND CONSTRUCTION CO.,** | ) | |
| **INC., and BEDFORD COMMONS** | ) | |
| **ASSOCIATION, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>AMENDED COMPLAINT</u>

For its Amended Complaint against Defendants (including newly-added Defendant John T. Rochford), Plaintiff states as follows:

### <u>Overview</u>

1.      Plaintiff, RevPAR Green Hills, LLC, brings this action under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26 (as well as certain state law claims).  Defendants Donald F. ("Trey") Rochford, John T. Rochford, Rochford Realty and Construction Co., Inc., and Bedford Commons Association, Inc. (acting through Defendants Trey Rochford, John Rochford, and the members of its "Design Review Committee") have conspired, combined, confederated and agreed with one another and others to prevent Plaintiff from building a hotel (specifically, a "Hyatt Place" Hotel) on its property at 3818 Bedford Avenue in Nashville, within the confines of Defendant Bedford Commons Association, Inc. (hereinafter sometimes referred to as "Association").  Plaintiff automatically became a member of Defendant Association when it became the owner of the 3818 Bedford Avenue property in 2018.

2. The object of the conspiracy was and remains to prevent competition with the nearby Hampton Inn & Suites Nashville-Green Hills ("Hampton Inn") located at 2324 Crestmoor Road in Nashville, approximately three-tenths of a mile driving distance from Plaintiff's property at 3818 Bedford Avenue. Defendants John and Trey Rochford (both sharing financial and other interests in the Hampton Inn, which Defendant John Rochford as described has "our hotel") orchestrated the formation and manipulated the conduct of a "Design Review Committee" (hereinafter sometimes referred to as "DRC") of Defendant Association to ensure that the members of the DRC would reject Plaintiff's building application primarily for reasons of their own comfort and convenience (all three members of the DRC literally living and/or working next door to, or across the street from, the hotel construction site). The stated "reasons" for the DRC's rejection— which Defendant Trey Rochford authored, but to which the members of the DRC agreed—were both pretextual and devoid of merit.

3. Plaintiff's Hyatt Place Hotel would compete in interstate commerce with the Hampton Inn. By preventing construction of the Hyatt Place Hotel, Defendants have unlawfully restrained competition in the interstate hotel market in the Nashville-Green Hills area, which draws heavily from guests traveling in interstate commerce, especially in view of the area's proximity to numerous popular travel destinations, multiple Interstate highways, and a major commercial airport.

4. Setting aside Plaintiff's antitrust and unfair competition claims, Defendants also violated Tennessee state law by acting unreasonably, arbitrarily, and capriciously in denying Plaintiff's construction application, for which Plaintiff seeks both injunctive relief and damages.

### The Parties

5. Plaintiff, RevPAR Green Hills, LLC ("RevPAR"), is a Georgia limited liability corporation with its principal place of business at 3217 Teton Drive, Atlanta, Georgia 30339. It

2

was formally incorporated on November 20, 2018, although its principals and representatives had been operating as an organization to acquire the property at 3818 Bedford Avenue and build a Hyatt Place Hotel since at least March 2018. Although most of the events referred to in this Amended Complaint occurred before November 20, 2018, the Amended Complaint will sometimes collectively refer to Plaintiff's predecessors-in-interest acting on behalf of what became RevPAR as "Plaintiff" for ease of reference.

6.    Defendant Donald F. "Trey" Rochford ("Trey Rochford") is a citizen and resident of Nashville, Davidson County, Tennessee. Among other capacities, he is the "Vice President – Administration" for Defendant Rochford Realty & Construction Co., Inc., the management company for the Association. At all relevant times, acting in his capacity with Defendant Rochford Realty & Construction Co., Inc., as the management company for the Association, Defendant Trey Rochford acted as the "management agent" and "recording secretary" (both terms that he has used to refer to himself) for the Association, including its Board of Directors and the DRC. Defendant Trey Rochford is the son of Defendant John Rochford. Defendant Trey Rochford was, at all relevant times, also acting as an agent for GH Company, GP, the owner of the real property occupied by the Hampton Inn located at 2324 Crestmoor Road in Green Hills, and for Rochford Hotel Group, the operator of the Hampton Inn and the holder of the Hampton Inn franchise. Defendant Trey Rochford holds what he has described as a "contingent future interest" in the ownership of the subject Hampton Inn.

7.    Defendant John T. Rochford is a citizen and resident of Nashville, Davidson County, Tennessee. Among other capacities, he is the President and sole owner of Defendant Rochford Realty & Construction Co., Inc., the management company for the Association. At all relevant times, Defendant John Rochford was a member of the Association's Board of Directors, as the representative of Defendant Rochford Realty & Construction Co., Inc. Defendant John

3

Rochford is also one of the three partners in GH Company, GP, the owner of the real property occupied by the Hampton Inn located at 2324 Crestmoor Road in Green Hills, and was, at all relevant times, acting as an agent for GH Company, GP. In addition, he is one of the two partners in Rochford Hotel Group, the operator of the subject Hampton Inn and the holder of the Hampton Inn franchise, and he was, at all relevant time, also acting as an agent for Rochford Hotel Group.

8.     Defendant Rochford Realty and Construction Co., Inc. ("Rochford Realty"), is a Tennessee corporation with its principal place of business at 2200 Abbott Martin Road, Suite 201, in Nashville. At all relevant times, Defendant Rochford Realty, acting through Defendants Trey Rochford and John Rochford, was the management company for the Association. The conduct of Defendant Trey Rochford acting in his capacity as the "management agent" or "secretary" for the Association and of Defendant John Rochford acting as a Board member and agent of the Association is attributed to Defendant Rochford Realty (as the Association's management company) on the basis of respondeat superior.

9.     Defendant Bedford Commons Association, Inc., is a Tennessee nonprofit corporation with its principal place of business at 2200 Abbott Martin Road, Suite 200, in Nashville (the offices of Defendants Rochford Realty, Trey Rochford, and John Rochford). It operates as a homeowners' association under its March 17, 2005, "Declaration of Covenants, Conditions, Restrictions, and Easements for Bedford Commons" (hereinafter, "Covenants and Restrictions"), as supplemented. The Association consists of eight lots within its geographic confines, and the owners of the lots are the Association's "members." Plaintiff's property at 3818 Bedford Avenue is the only remaining undeveloped lot in the Association. Article VI, section 6.1 of the Association's Covenants and Restrictions contemplates the formation of a Design Review Committee with the responsibility "for reviewing all plans for the proposed use, design, construction and alteration of Buildings and Improvements within Bedford Commons and for

4

performing such other functions as are delegated to it pursuant to this Declaration." At all relevant times, Messrs. Ron Farris, Jackson Moore, and Mike Munday—all owners of condominiums within the Association's confines—constituted the DRC.

### Subject Matter Jurisdiction

10.     This case arises under the antitrust laws of the United States, specifically 15 U.S.C. §§ 1 and 26. Accordingly, jurisdiction lies in this Court under 28 U.S.C. § 1331. Additionally, this Court has original jurisdiction over this antitrust action under 28 U.S.C. § 1337, and it has supplemental jurisdiction over Plaintiff's state law claims (Counts III-VI) under 28 U.S.C. § 1367.

### Personal Jurisdiction

11.     All Defendants are domiciled in, organized under the laws of, or have their principal place of business in Nashville, Davidson County, Tennessee, thereby establishing personal jurisdiction under Fed. R. Civ. P. 4(k)(1) and Tenn. Code Ann. § 20-2-222(1).

### Venue

12.     Plaintiff seeks injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26. Venue for such actions lies in "any court of the United States having jurisdiction over the parties[.]" Id. Because this Court has jurisdiction over the parties, as outlined above, venue lies in the Court. In addition, venue lies in this Court under 28 U.S.C. § 1391(b)(1)&(2).

### The Facts

13.     Plaintiff and its various affiliates have, for several years, been in the business of constructing and selling hotel properties, primarily in the southeastern United States. Its principals are Pieush Patel, Hemel Surati, Bhavesh Patel, Vrushank Surati, Sachin Patel, Dharmesh Surati, and Vikash Surati.

14.     In the early spring of 2018, Plaintiff's principals began discussions with Edward Ewing about the possibly of acquiring the property at 3818 Bedford Avenue, which Mr. Ewing

5

then owned. Plaintiff's predecessor-in-interest, RevPAR Development, LLC, and Mr. Ewing entered into a Purchase and Sale Agreement for the property on April 20, 2018. The sale ultimately closed on December 10, 2018.

15.     Mr. Ewing had owned the vacant lot at 3818 Bedford Avenue since March 2012. As the owner of the 3818 Bedford Avenue property Mr. Ewing was a member of the Association by operation of the Covenants and Restrictions that ran with the property. The property at 3818 Bedford Avenue was and remains one of the eight total lots in the Association, and the only unimproved property.

### The Association's Approval Of The Proposed Ewing Office Building By Defendant John Rochford

16.     Beginning in or about late 2015, Mr. Ewing developed a plan to build an office building on the property, and he engaged Southeast Venture, LLC ("Southeast Venture"), as the design architect. Southeast Venture prepared detailed drawings and renderings of the proposed office building.

17.     Sometime in the summer of 2016, Mr. Ewing caused the renderings to be delivered to Defendant John Rochford for his (Defendant John Rochford's) pre-construction approval of the project on behalf of the Association. Mr. Ewing reasonably believed that Defendant John Rochford had the authority to approve the proposed building project as the manager of the Association's property (or so Mr. Ewing understood to be Defendant John Rochford's position). He also had both a pre-existing business and social relationship with Defendant John Rochford, based in part on the fact that Mr. Ewing had built and owned the nearby "Astoria Building" located at 3803 Bedford Avenue (which was not within the eight-lot Association, however).

18.     Sometime after the delivery of the renderings, Defendant John Rochford and Mr. Ewing spoke about the office building plans. Defendant Rochford described the drawings as

6

beautiful, and he commented to the effect that Mr. Ewing always did such a great job. In addition, Defendant John Rochford volunteered that the only thing he did not want was "another hotel" (or words to that effect), referring in context to the Courtyard by Marriott located at 3800 Bedford Avenue (likewise not in the Association, although immediately adjoining). Defendant John Rochford had unsuccessfully opposed that hotel project, which opened in July 2014 and competes in interstate commerce with the Rochford Hampton Inn just up the street at 2324 Crestmoor Road (which Defendant John Rochford has referred to as "our hotel"). At some point, Mr. Ewing subsequently caused the renderings to be retrieved from Defendant John Rochford's office.

19. Based upon his communications with Defendant John Rochford, Mr. Ewing reasonably understood that his office building project had been approved by the Association. Subsequently, however, Mr. Ewing unilaterally decided not to go forward with the office building project for his own business reasons.

20. Defendant John Rochford did not advise Mr. Ewing that the construction of his proposed office building required any further approval, i.e., approval above and beyond that which Defendant John Rochford had conferred. Defendant John Rochford specifically did not mention the necessity of any approval by a "Design Review Committee" elected by the Association's Board of Directors (or otherwise). In fact, neither a Design Review Committee nor even a functioning Board of Directors even existed at the time. In further fact, despite the apparent mandate of Article VI, section 6.1 of the Association's Covenants and Restrictions, no Design Review Committee had ever been created in the Association's entire history.

21. On July 25, 2016 (presumably after he had conveyed his approval of the office building project to Mr. Ewing, in context), Defendant John Rochford responded to an email from an Association condominium owner who had noticed what he assumed to be "site preparation" activity on the vacant lot at 3818 Bedford Avenue (next door to this resident, now deceased).

7

Defendant John Rochford's email response copied over a dozen member representatives and/or residents of the Association. In his email to this group, Defendant John Rochford conveyed Mr. Ewing's statement to him that the building would be "first class," and Defendant Rochford assured the group that "that will be the case." All in keeping with Defendant John Rochford's previous communications with Mr. Ewing described above.

22. On July 28, 2016, following two telephonic inquiries from Association residents about the "impending apparent construction on the Ewing Property," Defendant Trey Rochford emailed his father (Defendant John Rochford) the relevant portion of the Association's Covenants and Restrictions concerning the ostensible requirement of approval by a Design Review Committee for the Ewing building project (Article VI), and he proposed sending a copy to Mr. Ewing. Defendant Trey Rochford further acknowledged that the Association's Board had not actually seated a Design Review Committee, and he offered "to coordinate that discussion if you like."

23. The next day (July 29), Defendant Trey Rochford emailed Article VI of the Covenants and Restrictions to "mcollins@emglo.com," apparently believing that this was a contact person for Mr. Ewing. It was not. Mr. Ewing had employed a "Mary Ann Collins" in the past, but she left his employ in March 2013. Ms. Collins had probably used "empl*p*.com" (not "o") as an email address when Mr. Ewing employed her, but it was not a point of contact for Mr. Ewing by July 2016. (And, as stated above, Mr. Ewing had both a business and social relationship with Defendant John Rochford, and they had already been in communication about the office building project specifically in this time frame.) In any event, Mr. Ewing did not receive the Design Review Committee provisions in the Covenants and Restrictions, nor did he become aware of their existence until Defendants' rejection of Plaintiff's Hyatt Place proposal in October 2018.

8

(By way of further background, it bears mention that Mr. Ewing himself did not communicate by email.)

24.     Also on July 29, Defendants John and Trey Rochford had another email exchange between themselves about Mr. Ewing's proposed office building.  While Defendant John Rochford reported that a particular Association member "liked" the plans, Defendant Trey Rochford observed that "some of the people in the Master Association won't be happy if we simply skip the process."  He proposed "a quick vote to seat a DRC, then quickly approve the plans and move on."  He further stated that "[w]e have an obligation to manage the association professionally."

25.     About a month later (August 25, 2016), Defendant John Rochford's Executive Assistant transmitted an email to the Association's membership representatives and residents inviting them to review Mr. Ewing's "architectural plans" at the Rochford offices, which would be there "until the end of next week[.]"  This was, apparently (and at least in part), a belated response to the initial July 25 Association member's email referred to above.

26.     On August 31, 2016, Defendant John Rochford's Executive Assistant emailed him to inquire about forming a Design Review Committee to review the plans for the Ewing office building.  She pointed out that "the Board" was supposed to appoint a DRC, but that a Board had not even been set up.  She then asked if "we" should "set up a meeting to elect officers to the Board and then appoint members to the DRC?"  Defendant John Rochford responded to his Executive Assistant (with a copy to Defendant Trey Rochford) in full as follows:

> It is too much trouble since we have never followed those rules for any other building.  This is the last lot.  Let people come by and see the renderings if they wish.  Let this lay for now.  We have too many other things to do.

27.     In this manner, Defendant John Rochford gave his final approval for the construction of Mr. Ewing's proposed office building on behalf of the Association: "We have too many other things to do."  There was no DRC in existence to review the building plans at the time;

9

in fact, there was not even a functioning Board in existence to elect the members of a DRC. The point was rendered moot only because Mr. Ewing unilaterally abandoned his office building plans for his own business reasons.

28. Defendant John Rochford's comment about not following "those rules" was not isolated or devoid of context. Earlier in 2016 (on February 4), Defendant Trey Rochford sent an email to his father in response to inquiries he had received from certain Association residents who had asked "who is on the Board and when the meetings are," and Defendant Trey Rochford expressed concern that "they will come up again during the [annual] membership meeting." Defendant John Rochford briefly responded that he and two other individuals were the "original members," and that his Executive Assistant had some minutes. In reply, Defendant Trey Rochford observed that "[n]o one has any minutes that are current." He then suggested having "an extremely brief Master Association meeting. Otherwise, we run the risk of someone doing something to take over control since we aren't following the CC&Rs." (Referring to the Association's Covenants and Restrictions.)

## The Association's Rejection Of RevPAR's Hyatt Place Hotel Plan Orchestrated By The Rochford Defendants

29. Following Mr. Ewing's decision not to pursue his office building project, several months passed before Plaintiff's representatives learned of the property and began exploring the possibility of developing a hotel on it. In early 2018, they began communicating with representatives of Southeast Venture, the design architect for Mr. Ewing's prospective office building. Southeast Venture put RevPAR's representatives in touch with Mr. Ewing, which led to the execution of a Purchase and Sale Agreement between Mr. Ewing and RevPAR Development, LLC, on April 20, 2018.

10

30. On April 24, 2018, the Association conducted an annual meeting (the first since March 2016, according to the Minutes produced in discovery) and elected five Board members, including Defendant John Rochford (as the representative of Defendant Rochford Realty), Mike Munday, and Jackson Moore. Insofar as the documents produced in discovery disclose, the Association did not send notice of the meeting to Mr. Ewing, even though he was still the owner of 3818 Bedford Avenue, and still easily reachable through Defendant John Rochford. (It is possible, however, that notice was sent to the same inoperative and incorrect email address referred to above for Mary Ann Collins, Mr. Ewing's long-departed former employee.)

31. After the execution of the Purchase and Sale Agreement with Mr. Ewing on April 20, Plaintiff's representatives (including Southeast Venture personnel) began work on obtaining the necessary approvals for the hotel project from the Metropolitan Nashville Planning Department. Its approval was necessary to ensure compliance with the "Bedford Avenue Urban Design Overlay" ("UDO"), in which 3818 Bedford Avenue lies. (The "footprint" for the Urban Design Overlay overlaps with, but is substantially larger than, the footprint of the Association.)

32. On or about July 3, 2018, however, Plaintiff's representatives learned for the first time that the Association appeared to have a separate "architectural review process" that might apply to the hotel construction project, which was confirmed.

33. On July 13, 2018, Plaintiff made its initial submission to the Design Review Committee of the Association (which it directed to Defendant John Rochford as President of Defendant Rochford Realty, the Association's management company). The same day, Defendant John Rochford sent an email to his business partner and an Association member representative suggesting that the Association should engage an architecture firm and further stating that "we are using" a certain Nashville attorney "to represent us in opposition if it does not meet the letter of the intent of the UDO [sic]." ("It" meaning the hotel project, in context.)

11

34.     On July 17, 2018, recently-elected Association Board member Jackson Moore emailed Defendant Trey Rochford to express his concern about the anticipated "construction parking" that the project would entail.  Mr. Moore's office condominium at 3817 Bedford Avenue sits directly across from the street from 3818 Bedford Avenue.  Defendant Trey Rochford responded, in pertinent part, that "I would prefer to see something that more clearly matches the character of the street," although he offered a disclaimer that his opinion didn't "really count" because he was not a member of the Association.  Nevertheless, Defendant Trey Rochford's opposition to the project was already manifest, and he was the Association's long-time "management agent" (acting on behalf of Defendant Rochford Realty, the Association's management company).

35.     The next day (July 18, 2018), the Association convened a specially-called, telephonic Association meeting (which Defendant Trey Rochford had initiated).  Defendant John Rochford opened the meeting by explaining that "this special meeting is in response to a proposal to develop 3818 Bedford Avenue" (per the Minutes).  (Consistent with its prior omissions, there is no evidence that the Association had even sent a valid notice of the meeting to Mr. Ewing, still the owner of the subject property and a proponent of the hotel project.)

36.     By contrast, neither Defendant Trey Rochford nor Defendant John Rochford had issued a call for a special Association meeting concerning the proposed Ewing office building.

37.     Present for the meeting were (at most) seven Association residents, including Ron Farris, Jackson Moore, and Mike Munday, condominium owners directly adjoining 3818 Bedford Avenue from either next door or across the street.  The Minutes record Ron Farris (an architect) stating that "*objections* might center around material usage, height of the building and parking requirements."  (Emphasis added.)

12

38.     According to the Minutes, Defendant Trey Rochford explained that the Association's Covenants and Restrictions called for a "Design Review Committee" to review proposals for construction.  He further observed that no such Committee was in place currently "because there hasn't been any construction in the Master Association for quite some time, and the committee wasn't needed until now."

39.     Defendant John Rochford then asked for "volunteers of anyone interested in serving on the Design Review Committee."  One attendee effectively recused himself from consideration because of a professional relationship with Mr. Ewing (thereby effectively acknowledging the absent Mr. Ewing's interest in the matter).  Thereafter, Ron Farris, Mike Munday, and Jackson Moore "each volunteered to serve," and the Minutes record that they were appointed unanimously by voice vote.

40.     The Association's Covenants and Restrictions do not limit membership in a Design Review Committee to Board members, members of the Association, or even residents of the Association.  In fact, they contain no restrictions or limitations for membership on a Design Review Committee whatsoever.  Nevertheless, the three volunteers that the Association "appointed" to the Design Review Committee were all condominium owners within the Association, living or working contiguously to the prospective construction site, at least two of whom had already voiced their initial opposition to the project (Messrs. Moore and Farris).  (And documents produced in discovery disclose that Mr. Farris's wife—a next-door neighbor to the site, with her husband—was strongly opposed to the project from the beginning.)

41.     Having orchestrated this composition of the Design Review Committee (consisting solely of members inherently predisposed against Plaintiff's construction project for their own personal reasons), Defendants Trey and John Rochford had already largely succeeded in stopping the construction of Plaintiff's Hyatt Place Hotel.  All that followed was a largely formalistic

13

exercise in futility (from RevPAR's perspective in hindsight), although the agreements and approvals of the DRC members remained essential along the way.

42. Acting in concert with his father (Defendant John Rochford), Defendant Trey Rochford completely dominated and controlled the relevant actions of the newly-formed Design Review Committee, starting with a July 20, 2018, letter on Bedford Master Association letterhead to Southeast Venture, which he authored. This was in response to the July 13 submission that Southeast Venture had made to the Association (directed to Defendant John Rochford) on behalf of RevPAR.

43. Defendant Trey Rochford also worked with certain Association residents and representatives of Chartwell Hospitality, LLC ("Chartwell"), to petition the Metropolitan Nashville Planning Department to reject Plaintiff's hotel plans for alleged non-compliance with the Bedford Avenue UDO. As the owner (in whole or in part) and/or manager of three hotels within the Bedford Avenue UDO that would have also faced competition from the prospective Hyatt Place Hotel, Chartwell shared a common interest with Defendants in derailing Plaintiff's hotel project, and the same lawyer jointly represented the Association and Chartwell for that purpose. The effort to obtain the Planning Department's disapproval of the project was ultimately unsuccessful, however. This left it to the Rochford Defendants (acting in concert with the DRC) to kill the project, to the end of preventing competition with "our" hotel and, more broadly, unreasonably restraining competition in the interstate Nashville-Green Hills hotel market.

44. In a September 13, 2018, email with the subject line "HYATT PLACE OBJECTIONS," Laurie Farris (wife of DRC member Ron Farris), advised Defendant Trey Rochford that "your time is best spent with the DRC" (not with the Metro Planning Department, in context). For his part, Defendant Trey Rochford suggested that Association residents opposed

14

to the project send separate letters of opposition to the Planning Department, to "carry more impact than a communal letter."

45.     Ms. Farris and others continued in their efforts to obtain a rejection from the Planning Department.  In an email to Ms. Farris on September 20, Defendant Trey Rochford opined that an upcoming meeting with Metro Councilman Russ Pulley and other individuals at the Planning Department scheduled for September 25 "will be the best shot to get the city to stop it." ("It" meaning RevPAR's project.)

46.     The "best shot" missed.  Following the meeting at the Planning Department on September 25, Defendant Trey Rochford sent an email to the three members of the DRC and others the next day (September 26, 2018).  In this email, Defendant conveyed that RevPAR's building application would likely be approved by the Planning Department, "administratively, without hearing."  But he went on: "None of that changes the fact that the plans must still be approved by the Design Review Committee before they are able to start construction."  ("They" meaning RevPAR's representatives.)

47.     On October 4, 2018, the Metropolitan Nashville Planning Department formally approved (in writing) Plaintiff's hotel plans for compliance with the Bedford Avenue UDO, with certain "minor modifications."

**The Proffered Reasons For The Rejection Are Both Pretextual And Meritless**

48.     On October 10, 2018, Plaintiff's representatives met with the DRC, Defendant Trey Rochford, and perhaps others to make their live presentation in support of the Hyatt Place Hotel project.  Immediately after the meeting, Defendant Trey Rochford sent a draft of a one-page rejection letter to Messrs. Farris, Moore, and Munday (the DRC), who approved it.  Later that day, Defendant Trey Rochford sent the letter (with his signature) to Plaintiff's representatives,

15

unchanged.  (Oddly, the letter recites that the Committee had first reached a decision, then took a vote.)  The letter promised that a "more thorough response outlining more specifics" would be forthcoming.

49.     Defendant Trey Rochford sent a draft of the "more thorough response" to DRC member Ron Farris (but only Mr. Farris) on October 19.  On October 23, Defendant Trey Rochford sent a draft to all three members of the DRC.  (Because the drafts themselves were not produced in discovery, a comparison is not possible.)

50.     There is an unsigned letter dated October 30, 2018, purporting to be from the Design Review Committee to Defendant Trey Rochford thanking him "for compiling an outline that discusses the basis of our disapproval for the Hyatt Place Hotel project" and asking him to prepare a letter to the Hyatt Place Hotel providing a "more detailed explanation" as to why the DRC had rejected its proposal.

51.     The objective facts compel the inference that this letter was a sham.  Defendant Trey Rochford had already sent drafts of the requested letter (later referred to as a "report") to Mr. Farris and then to all three members of the DRC on October 19 and October 23, respectively.  In addition, in an email on November 1, Defendant Trey Rochford reported to the members of the DRC that he had already sent the draft final report to the Association's counsel for his review before it went to Plaintiff's representatives.

52.     On November 5, 2018, Plaintiff's representatives received by email a six-page, unsigned PDF from Defendant Trey Rochford entitled "Bedford Avenue Master Association Design Review Committee Report – Proposed Hyatt Place for 3818 Bedford Avenue" ("DRC Report"), which the members of the DRC had approved.  A copy is attached as Exhibit A.  It closely tracks the substance of the October 30 sham letter.  The "Properties" function of the PDF reflects that the "Author" of the document was Defendant Trey Rochford, which was plain enough

16

regardless. By agreement of Defendant Trey Rochford and the members of the DRC, this Report conveyed the DRC's formal rejection of Plaintiff's Hyatt Place Hotel proposal.

53.     The ostensible grounds for rejection that the DRC Report (Exhibit A) articulates are facially unreasonable, arbitrary, and capricious. Nevertheless, they constituted the pretext that Defendants Trey and John Rochford concocted (with the DRC's approval) to prevent the Hyatt Place Hotel from competing in interstate commerce with their Hampton Inn and, more fundamentally, from competing at all in the Nashville-Green Hills interstate hotel market.

54.     The preface to the DRC Report recites that under the Covenants and Restrictions, the DRC has the right to approve or disapprove any plans or specifications "on any reasonable grounds, including, without limitation, any matter which, in the absolute judgment of the [DRC], would render the proposed improvements of use inharmonious with the general plan for improvement of Bedford Commons." (The Report has no page numbers to cite for reference.)

55.     But the Report gets more specific, reciting that the Covenants and Restrictions call for a review to be consistent with the following guidelines (as applicable to Plaintiff's site): (a) Features; (b) Mechanical Equipment; (c) Service Areas and Dumpsters; (d) Signs; and (e) Utilities. (Plaintiff has not included the descriptions that went with these headings.) It bears emphasis that there is no mention of "lot coverage" or "parking" in the Covenants and Restrictions.

56.     The Report goes on to state that the DRC had adopted the Bedford Avenue UDO (copy attached as Exhibit B) for assessing the "congruity of proposed projects with the surrounding properties" of the Association on Bedford Avenue. "[T]he [DRC] feels that the Bedford Urban Design Overlay document is the most logical adopted set of guidelines to compare a proposed project to the surrounding properties." The Covenants and Restrictions make no reference to the Bedford Avenue UDO guidelines, however, so if the DRC has adopted them, it must appear elsewhere or not be documented at all.

17

57.     The DRC Report then states that "[u]tilizing these guidelines as a basis for judgement," the DRC had found the current proposal for a Hyatt Place Hotel to be sufficiently "inharmonious with the existing properties in the Bedford Master Association as to warrant a vote to disapprove the plan."  However, this was contrary the conclusion of the Metropolitan Planning Department itself, which had just recently found that the plan complied with the Bedford Avenue UDO (on October 4).  The Report offered no explanation as to why the DRC's conclusion was contrary to that of the Planning Department (nor did it even acknowledge the contradictory conclusions).

58.     There is also a substantive discontinuity in the contents of the Report.  The Report begins by stating that the DRC's review must be consistent with the following guidelines from the Association's Covenants and Restrictions (listing Features, Mechanical Equipment, Service Areas and Dumpsters, Signs, and Utilities).  These subjects do, in fact, appear in the Covenants and Restrictions.  However, there is no further discussion of these topics or RevPAR's compliance with their requirements in the Report.  Instead, the Report jumps to these six subjects: (a) "Size of the project"; (b) "Parking"; (c) "Intensity of Use"; (d) "Management of Construction Activities"; (e) "Material Usage"; and (f) "Lack of Emphasis on All Sides."  These topics (or at least four of them) were purportedly derived from the Bedford Avenue UDO standards.  But again, the Metropolitan Nashville Planning Department had already found that RevPAR's plan complied with those standards.

59.     The most critical finding in the Report was that "78% of the area of [Plaintiff's] lot would be covered by the building" (hereinafter referred to as "lot coverage").  This was in contrast to the two neighboring buildings, which had approximately 33% and 42% lot coverage, according to the Report.  Based on this finding, the DRC concluded that Plaintiff's hotel plan would be inconsistent with one of the UDO goals, i.e., to "[e]ncourage new development to be sensitive of

18

and compatible to the scale and character of its setting." To reiterate, however, the Covenants and Restrictions say nothing about "lot coverage." Moreover, RevPAR fully complied with the UDO's setback requirements, which are as close as the UDO comes to addressing "lot coverage."

60.     The quoted language from the Bedford Avenue UDO (Exhibit B) appears as the last of six bullet points on page 2 of the UDO document under the heading "Intent of the Guidelines." In other words, it is not even a Guideline, and even if it were, it is vague to the point of meaninglessness. Moreover, one will search the UDO Guidelines in vain for anything to do with "lot coverage" or the like.

61.     The unsigned DRC Report also refers to the "Illustrative Concept Plan" on page 4 of the Bedford Avenue UDO (and reprinted in the Report) to suggest that "[i]t should be reviewed as a guide for appropriate building placement, parking arrangement, buffer placement, and street design." The Report further contends that the diagram on page 4 serves to illustrate the "intent" of the general plan with respect to "building size and placement," etc. The Illustrative Concept Plan may have some value as a general "guide," but it does not inform in any way the contrived issue of "lot coverage," as even the most cursory examination of the diagram reveals.

62.     After receipt of the November 5 DRC Report, Plaintiff's principals retained counsel and set about to address the DRC's concerns, particularly with respect to the issues of parking and material usage. RevPAR believes that it has done so, although at substantial expense. To address the parking concern, Plaintiff added an additional level of underground parking—at a cost of approximately $2 million—such that the plan exceeded the parking requirements of the UDO. The DRC has repeatedly complained that Plaintiff should not charge for valet parking, but that is beyond the purview of the DRC. RevPAR addressed the material usage concern by converting the façade to approximately 90% brick, at a cost of approximately $400,000.

19

63.     The other three concerns were, in order, "intensity of use," "management of construction activities," and "lack of emphasis on all sides."  As written up by Defendant Trey Rochford, the intensity of use concern was, in substance, the lot coverage issue restated.  As Defendants should well know, RevPAR has no control over the "management of construction activities"; the Metro Public Works Department has exclusive control over that.  As for "lack of emphasis on all sides," even the DRC acknowledges that the Bedford UDO does not address this "principle."  Nevertheless, RevPAR has made design changes to meet this concern.

64.     As for "lot coverage," the simple fact is that RevPAR cannot materially reduce the footprint of the hotel without losing rooms and rendering the project financially infeasible.  Plaintiff has taken considerable pains at substantial expense to design and redesign other possibilities on a smaller footprint, but none of them have proven feasible.

65.     At one point, a representative of the Association floated the possibility of a four-story hotel with a smaller footprint (approximately 60% lot coverage).  Plaintiff's architects drew it up, but that concept would not work without losing rooms.  Ironically, the Bedford Avenue UDO limits buildings on the East side of Bedford Avenue (3818 Bedford Avenue's location) to three stories, so there was no reasonable likelihood of obtaining approval for a four-story hotel from the Metro Planning Department *and* the Metro Council to begin with.  (Because the Bedford Avenue UDO is codified as a Metro Ordinance, Council approval would also be necessary.)

66.     In any event, Plaintiff and its representatives sought an amicable resolution with Defendants Trey Rochford and the Association from November 5, 2018, up to the original filing of this action on April 8, 2019, obviously without success.  RevPAR has sustained substantial damages on account of the unreasonable delay in obtaining approval of its hotel project, estimated to be on the order of $10 million, and will continue to do so.

20

## Count I – All Defendants
### (Injunctive Relief Under Section 16 Of The Clayton Act)

67. Plaintiff incorporates by reference each preceding paragraph as if fully restated herein.

68. RevPAR's proposed Hyatt Place Hotel would compete in interstate commerce in the hotel market serving the Nashville-Green Hills area. That market caters to interstate travelers drawn to the numerous travel destinations in the immediate area or who are in the area on business, which interstate travel is facilitated by the proximity of three Interstate highways and a major commercial airport. Moreover, the operations of the proposed Hyatt Place Hotel would have a substantial effect on interstate commerce.

69. Defendants combined, conspired, confederated and agreed together to prevent Plaintiff from building a hotel at 3818 Bedford Avenue that would compete in interstate commerce with the nearby Hampton Inn at 2324 Crestmoor Road. The conspiracy more broadly constituted an unreasonable restraint on competition in interstate commerce in the Nashville-Green Hills hotel market. Defendants' business activities had a substantial effect, or the potential for causing a substantial effect, on interstate commerce. RevPAR suffered injury in its business or property as a proximate result of the combination or conspiracy, including (but not limited to) lost hotel revenues.

70. Defendants' concerted efforts to prevent RevPAR from building a hotel at 3818 Bedford Avenue for the purpose of restraining competition in interstate commerce in the Nashville-Green Hills hotel market constituted a *per se* violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Alternatively, Defendants' conduct violated section 1 under a "rule of reason" analysis. The pretextual grounds for denying RevPAR's application set forth in the DRC Report are both unreasonable and completely anti-competitive.

21

71.     Under section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, any private party "shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws[.]"  Under the antitrust laws, any conspiracy that unreasonably restrains trade or commerce is illegal.  15 U.S.C. § 1.

72.     Because it has the authority to approve or disapprove the construction of new hotels within its confines, the Association has market power within the Nashville-Green Hills interstate hotel market, which it exercised against RevPAR.  The approval, or disapproval, of the construction of new hotels that would compete in interstate commerce constitutes trade or commerce (or both) within the meaning of the antitrust laws.

73.     RevPAR will suffer loss or damage from a violation of section 1 of the Sherman Act if Defendants continue to deny its application to build a hotel at 3818 Bedford Avenue, or otherwise prevent it from doing so.

74.     The Court should grant injunctive relief against the loss or damage threatened or caused by Defendants' violations of section 1 of the Sherman Act by prohibiting Defendants from further denying RevPAR's plans for its proposed Hyatt Place Hotel.

### Count II – All Defendants
### (Action For Treble Damages Under Section 1 Of The Sherman Act)

75.     Plaintiff incorporates by reference each preceding paragraph as if fully restated herein.

76.     Section 1 of the Sherman Act, 15 U.S.C. § 1, provides that every contract, combination in the form of trust or otherwise, or conspiracy, in (unreasonable) restraint of trade or commerce among the several States, is illegal.

77.     As detailed above, Defendants' agreement between and amongst themselves and with others to prevent Plaintiff from building a hotel at 3818 Bedford Avenue constituted an

22

unreasonable restraint on interstate commerce, specifically, interstate commerce in the hotel market in the Nashville-Green Hills area.

78.     Defendants' business activities had a substantial effect, or the potential for causing a substantial effect, on interstate commerce, and Defendants' challenged activities involve a substantial volume of interstate commerce.

79.     RevPAR suffered injury in its business or property as a proximate result of the combination or conspiracy described above in an amount to be determined by a jury. Under section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, Plaintiff is entitled to threefold the amount of damages it sustained, plus its reasonable attorneys' fees and costs.

<u>**Count III – All Defendants**</u>
**(Action For Damages for Intentional Interference with Prospective Business Relations)**

80.     Plaintiff incorporates by reference each preceding paragraph as if fully restated herein.

81.     RevPAR, as part of its plans to build a hotel at 3818 Bedford Avenue, had a prospective relationship with an identifiable class of third persons—namely, individuals selecting a hotel for lodging in the Green Hills area of Nashville, Tennessee.

82.     Defendants or their representatives had knowledge of that prospective relationship by virtue of, among other things, their attendance at the September 25, 2018, meeting at the Metropolitan Nashville Planning Department, their attendance at the October 10, 2018, in person presentation by RevPAR regarding its hotel construction proposal, their role in reviewing Plaintiff's hotel plans, and their experience owning and operating a hotel approximately three-tenths of a mile from RevPAR's proposed site.

83.     Defendants intended to cause the breach of these prospective business relationships by preventing Plaintiff from building a hotel that would serve those future, identifiable hotel guests.

84.     Defendants acted with improper motives and using improper means, including conduct that violated antitrust statutes and constituted unfair competition, as described above.

85.     Defendants' tortious interference has resulted in damages to Plaintiff, which has been prevented from recognizing the revenues and profits that would have resulted from the prospective business relations at issue as a result of Defendants' tortious interference.

**Count IV – Defendants Trey Rochford, John Rochford,
<u>And Rochford Realty</u>
(Allegations Establishing Conspiracy Liability for Counts III and VI)**

86.     Plaintiffs incorporate by reference each preceding paragraph as if fully restated herein.

87.     Defendants Trey Rochford, John Rochford, and Rochford Realty had a common design with each other and with Defendant Bedford Commons Association to prevent competition with the Hampton Inn located at 2324 Crestmoor Road, in which Defendants Trey Rochford, John Rochford, and Rochford Realty have financial and other interests.

88.     Defendants conceived this common design in order to accomplish by concerted action unlawful purposes—including the restraint of trade and tortious interference with Plaintiff's prospective business relations—by unlawful means—including unfair competition and other unlawful or tortious conduct.

89.     In furtherance of this conspiracy, Defendants committed several overt acts, including but not limited to the Association's overt act of rejecting Plaintiff's hotel plans.

90.     The participation of Defendants Trey Rochford and John Rochford in this conspiracy was outside the scope of their representative capacities with Defendant Bedford

24

Commons Association. Instead, their actions and involvement were done to further their own personal purpose—restraining competition with the Hampton Inn located at 2324 Crestmoor Road—and not any purpose of Defendant Bedford Commons Association.

91. Defendants Trey Rochford, John Rochford, and Rochford Realty have actively participated in the overt acts in furtherance of this conspiracy, intentionally aided Defendant Bedford Commons Association in those acts, and ratified the Association's tortious acts done for the benefit of Defendants Trey Rochford, John Rochford, and Rochford Realty.

92. As a result of Defendants' overt acts in furtherance of this conspiracy, RevPAR has suffered damages, including the additional costs incurred in its futile efforts to convince Defendants to approve its plans and the lost profits caused by its inability to construct its planned hotel.

93. Defendants Trey Rochford, John Rochford, and Rochford Realty should therefore be held jointly and severally liable for damages caused by the wrongful acts committed by Defendant Bedford Commons Association in furtherance of this conspiracy, and vice-versa.

## Count V -- Defendant Bedford Commons Association
### (Declaratory Judgment and Injunctive Relief)

94. Plaintiff incorporates by reference each preceding paragraph as if fully restated herein.

95. 28 U.S.C. § 2201 authorizes this Court, "[i]n a case of actual controversy within its jurisdiction, . . . [to] declare the rights and other legal relations of any interested party seeking such declaration."

96. An "actual controversy" exists between Plaintiff and Defendant Bedford Commons Association regarding the Association's refusal to approve Plaintiff's hotel plan.

25

97.     In denying approval for Plaintiff's hotel plan, the Association, through its DRC, acted arbitrarily, capriciously, unreasonably, and in bad faith.

98.     Plaintiff's hotel plan was consistent with the surrounding circumstances and the general scheme of development, and the Association lacked a proper basis for rejecting that plan. Instead, the Association relied upon a series of pretextual and meritless reasons, which are either improper considerations as a general matter, improperly interpreted with respect to Plaintiff's plan, or abandoned, waived, or inequitable or unfair in light of general material changes in the character of the neighborhood.

99.     Accordingly, Plaintiff seeks a declaration from this Court under 28 U.S.C. § 2201 that its hotel plan is consistent with the Bedford Commons Association's Covenants and Restrictions, and that the Association must approve those plans.

100.    Moreover, because Plaintiff will suffer irreparable harm if Defendant Bedford Commons Association continues to refuse approval for its hotel plan, RevPAR requests an injunction prohibiting the Association from continuing to disapprove its hotel plan.

### Count VI – All Defendants
**(Action For Damages For Unreasonable, Arbitrary, and Capricious Denial)**

101.    Plaintiff incorporates by reference each preceding paragraph as if fully restated herein.

102.    Defendants are jointly and severally liable for the monetary damages that RevPAR sustained as a result of the Association's unreasonable, arbitrary, and capricious denial of RevPAR's application to build a Hyatt Place Hotel at 3818 Bedford Avenue, culminating in the November 5, 2018, DRC Report.

### JURY DEMAND

Plaintiff demands a trial by jury.

26

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendants in the amount of actual damages to be proven at trial, trebled under the Sherman Act, together with interest, attorneys' fees, costs, punitive damages in an amount to be fixed by the jury, a declaration that Plaintiff's hotel plan must be approved by Defendant Bedford Commons Association and an injunction to that effect, and such other and further general relief as this Court deems just and proper.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By:  /s/James G. Thomas
     James G. Thomas, TBPR No. 007028
     John E. Quinn, TBPR No. 012220
     Erik C. Lybeck, TBPR No. 035233

1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

*Counsel for Plaintiff, RevPAR Green Hills, LLC*

27

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, via the Court's electronic

filing system, on the following counsel of record, this the 4th day of December, 2019:


Ryan N. Clark, Esq.
Lewis, Thomason, King, Krieg & Waldrop, P.C.
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, Tennessee 37219
rclark@lewisthomason.com

*Attorney for Defendants Donald F. ("Trey")*
*Rochford, Rochford Realty & Construction*
*Co., Inc., and Bedford Commons*
*Association, Inc.*


/s/ James G. Thomas